### WEST COAST KALSOMINE CO. v. LUND et al.

(District Court, N. D. California, First Division. October 20, 1915.)

No. 15597.

SALES ☞418(16)—DELAY IN DELIVERY—MEASURE OF DAMAGES.

Where sellers of chalk failed to deliver it at the time agreed upon, the measure of damages was the difference between the market value when it should have been delivered and its market value when it was delivered; and where there was no change in market value, the buyer could not recover damages, though the contract price was less than the market price and the delay in delivery forced the buyer to buy chalk for use at the market price and though the sellers knew or had reason to know that a delay in delivery would compel the buyer to purchase other chalk, as this was not equivalent to an agreement to reimburse the buyer for any expense incurred in purchasing other chalk, and moreover, it would seem that the buyer suffered no damage, as it could have recouped its loss by selling a part of the chalk received from the sellers at the market price, unless it needed all of the chalk received from both sources.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1197; Dec. Dig. ☞ 418(16).]

In Admiralty. Libel by the West Coast Kalsomine Company against Henry Lund and another, copartners as Henry Lund & Co. Libel dismissed.

Ira S. Lillick, of San Francisco, Cal., for plaintiff.
McClanahan & Derby, of San Francisco, Cal., for defendants.

DOOLING, District Judge. This cause is submitted upon an agreed statement of facts. From this it appears that libelant bought of respondents on June 6, 1912, 1,500 tons of French chalk, to be paid for on delivery in San Francisco, and to be shipped from Europe to San Francisco in two shipments, the first shipment to be made during June/July, 1912, and the second to be made during November/December, 1912, or January, 1913. The first shipment was not made until May, 1913, at which time 500 tons were shipped, which arrived in San Francisco in July, 1913, and were afterwards delivered to and accepted by libelant. In the meanwhile, however, in March and April, 1913, libelant, to meet the requirements of its business, was compelled to purchase, and did purchase, 295 tons of French chalk at a price greater by $1,242.60 than the price agreed to be paid to respondents for an equal amount. If the chalk had been shipped in June/July, 1912, libelant would not have been compelled to make this purchase.

This action is to recover the said sum of $1,242.60. It is stipulated that the price paid by libelant for the 295 tons was the lowest price at which such chalk could have been purchased at the time and place of such purchase. It is also stipulated that the market price of French chalk, such as was contracted for by libelant, was the same on the day of the delivery of the first shipment to libelant as it was at the time and place at which under the contract it should, within a reasonable time, have been delivered, and that such market price was the same at all times between the date when such chalk should have been delivered, and the date when it was actually delivered. It is also stipulated that libelant reserves the right to show (if it be deemed material) that respondents, at the time of making the contract, knew or had reason to know that the said purchase made by libelant in March and April, 1913, was or would be the immediate, direct, and necessary result of a delayed shipment under said contract, respondents reserving the right to rebut such showing.

But under the circumstances this purchase seems to me to be a false quantity in measuring the damages. The real measure of damages is the difference between the market value of the chalk when it should have been delivered, and its market value when it was delivered. There is no agreement on the part of respondents to recoup libelant for any expense incurred by it in the conduct of its business, and the fact offered to be shown that respondents had reason to know that, if they did not deliver the chalk at the agreed time, libelant would be compelled to purchase other chalk, is not equivalent to an agreement on the part of respondents to pay to libelant any damages that might result from such purchase. In delaying delivery respondents were taking chances only on such

loss as might accrue to libelant by reason of a decline in the market value of the chalk, and not on any loss that might accrue to it by reason of the exigencies of its business. The loss complained of—if, indeed, any loss really occurred—was not due to respondents' failure to deliver on time, but to such failure to deliver plus the fact that libelant was conducting a business which required chalk at that par · ticular time. For this latter element respondents are not responsible.

And after all it is not clear that libelant has suffered any actual damage. It is true that it purchased 295 tons of chalk at an increase over the contract price; but, if I understand the stipulation, this chalk was purchased at the market price, which did not vary between the date of the purchase and the date of delivery by respondents of the first shipment. When this shipment of 500 tons was received, either all of it was required by libelant in its business, or it was not. If it was not, then libelant, by selling 295 tons at the market value, could have recouped itself for the amount paid for the chalk purchased by it from other sources. If all the chalk received from respondents was required by libelant in its business, in addition to the 295 tons purchased by it elsewhere, then this action is in substance an effort to compel respondents to furnish 295 tons more than libelant purchased, and at a price much below the then market value. However, as there was no decline in the market value of the chalk, and as damage resulting from such decline would be the only damage for which respondents could be held liable for delay in delivery, the libel must be dismissed.

A decree will be entered accordingly.